Clyde FITCH et al., Plaintiffs,

v.

UNITED STATES of America et al.,
Defendants.

No. C2 72–455.

United States District Court,
S. D. Ohio, E. D.

March 25, 1974.

———◆———

Frank J. Neff, Columbus, Ohio, for plaintiff.

· W. Robert Waters, Asst. U. S. Atty., Columbus, Ohio, for defendants.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, District Judge.

This matter is before the Court after trial of the above matter, the presentation of evidence and testimony and upon memoranda supplied to the Court. Based upon the foregoing evidence and such memoranda, the Court does file herewith its findings of fact, opinion and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

### I

### FINDINGS OF FACT

1. Plaintiff registered for Selective Service on or about November, 1964, with Selective Service Board No. 69, Inez, Kentucky. As a result of the national lottery held pursuant to Presidential Proclamation 2945, dated November 28, 1969, (34FR19017), he was entitled to receive random selection number 309, such number being assigned to those registrants born on November 26th. Instead, he was assigned by Local Board 69 the random selection number 132.

Such random selection numbers determined the order in which otherwise eligible men were drafted in the armed forces.

2. By reason of the erroneous assignment of random selection number 132, plaintiff was inducted into the armed forces of the United States on July 13, 1970. But for such erroneous assignment of random selection number, plaintiff would not have been inducted into the armed forces of the United States. No registrant holding random selection number 309 was inducted by Local Board 69, Inez, Kentucky, either in 1970 or at any time thereafter.

3. Pursuant to such induction, plaintiff served in the armed forces of the United States from July 13, 1970, to October 12, 1971, a total of fifteen (15) months. Included in such service was six months and twenty-seven days served in Viet Nam. During his period of service plaintiff was paid no more than $270.00 per month, or a maximum of $4050.00. No evidence of the monetary value of clothing, food, shelter, and other benefits supplied has been presented.

4. Approximately July 9, 1971, the error of plaintiff's induction was discovered and his discharge ordered. Such discharge was not effected until October 12, 1971. At the time of such discharge plaintiff was not relieved of his obligation to serve as a member of the Armed Forces Reserve. Plaintiff was denied a choice of remaining or not remaining in such Reserve and was misled by agents of the United States as to his obligation.

5. When inducted into the armed forces, plaintiff was employed as a shift foreman at the Microplastics Company, Columbus, Ohio, at an hourly wage of $3.20. Upon his return he was reemployed at $3.20 per hour at a lesser position. At the time of his return, shift foremen were receiving $4.25 per hour. Plaintiff lost as wages during the period of induction $10,706.00 plus $5005.00 by being reemployed at a lower scale from October, 1971, to June, 1973.

6. By reason of plaintiff's entry into the armed forces, his wife and child were unable to maintain the standard of living they had enjoyed prior to such induction and were required during a portion of the period of his service to reside with relatives.

7. While plaintiff was unable to make installment payments as required, no property of his was repossessed nor any default judgments obtained against him. Plaintiff was unable to make monthly installment payments on an automobile and interest on the unpaid balance was charged against him during the period of his service. No evidence has been presented as to the dollar amount of damages sustained by him.

8. While in service, plaintiff was trained and served as a truck mechanic and received a maximum net pay of $270.00 per month. Such pay included an award for service overseas and an award for hazardous duty although plaintiff was not at any time in actual combat. As an honorably discharged veteran plaintiff is now and will for the balance of his life be entitled to veterans' benefits including preference in hiring, veterans bonuses, educational opportunities, and favorable mortgage loans. No evidence has been presented as to the dollar value of such benefits nor can the value of future benefits be ascertained at this time.

## II

### OPINION

Insofar as the Court has been able to determine, this is a matter of first impression. We must depend, therefore, upon logic and reason without the guidance of other and wiser decisions.

There must be an initial reluctance for any court to award damages to a citizen called upon to serve his country. Almost from the dawn of history it has been recognized that ablebodied young men have a duty to contribute to the security of their nation by bearing arms and by participating in wars over which they had no control. Until quite recent-

ly, the young men who were called upon to serve were unable even to cast their vote for the very public officials who determined whether or not this nation required defending. An award of damages for so serving appears to run counter to this basic obligation.

Plaintiff was required to leave a job, he was separated from his wife and child, and he was required to remain in military service for fifteen months. He received in return education and training, medical services for himself and family and compensation including quarters, meals, and clothing which approached the level of compensation he had received in civilian life. Plaintiff is now an honorably discharged veteran of the armed forces of the United States. He has veterans' preference in the taking of civil service examinations, the services of the Veterans Administration, the right to a preferential mortgage loan, to continued medical services and to all bonuses, pensions and other benefits that may be awarded either by the State of Ohio or by the United States.

It should not be assumed that this recitation of benefits is intended to cast the problem in the form of a financial transaction. Whatever else it may be, this is not such a transaction to which the principles of contract are applicable.

█ There is no doubt that citizens owe a duty to this country—a duty to obey laws, a duty to bear arms, and a duty to preserve, protect and defend the Constitution of the United States. The recitation of duties of citizens, however, should not obscure the duties of country to citizens. This concept was best expressed by James Madison in the following words: "We have heard of the impious doctrine in the old world that the people were made for kings, not kings for the people. Is the same doctrine to be revived in the New, in another shape, that the solid happiness of the people is to be sacrificed to the view of political institutions of a different form? It is too early for politicians to presume on our forgetting what the public good, the

real welfare of the great body of the people, is the supreme object to be pursued and that no form of government whatever has any other value than as it may be fitted for the attainment of this project . . ." Federalist Papers No. 45.

This concept was carried into the very bedrock of our Republic by the following words in the Declaration of Independence: "That to secure these rights, governments are instituted among men deriving their just powers from the consent of the governed . . ."

Whatever else may be embraced in this concept of government, it must be at the very least that the United States of America is required to deal fairly, equitably and justly with its citizens.

The Congress of the United States in its wisdom and the President of the United States in his, established a system wherein some but not all of the ablebodied young men of this country would be called upon to serve in the armed forces. The plaintiff was not one of those who would have been called. Only by the negligence and carelessness of agents of the United States government was he required to serve. The evidence is clear that the random sequence number 132 was given to him erroneously in place of the number 309 to which he was entitled. The sole evidence presented to the Court of any action by the United States after learning of its error was a letter by the secretary of the draft board who expressed "regret." The Court also notes that while Selective Service found its error prior to July 9, 1971, plaintiff was not discharged from service until October 12, 1971, a matter of some three months. Is the plaintiff then limited to a letter of "regret" ? We think not.

This plaintiff was deprived of his freedom to come and go as he chose, to have the companionship of his wife and child, to select his own job, and to follow the vocation of his choice, whether or not it might be the most lucrative vocation that he could select.

■ We hold that citizen Clyde Fitch did not receive fair, just and equitable treatment at the hands of the United States of America and that because of the negligence of an agent of the United States of America, he is entitled therefore to damages.

## III

## CONCLUSIONS OF LAW

A. This Court has jurisdiction of the matter at hand in accordance with the Federal Torts Claim Act, 28 U.S.C. § 2671 and in accordance with 28 U.S.C. § 1346(b).

B. Plaintiff has sustained damages caused by the negligent act of an employee of the government while acting within the scope of his office.

C. Plaintiff has established by a preponderance of evidence a compensable loss of $11,661.00, being the total wages lost by plaintiff during his period of induction less wages paid to him by the United States.

D. Plaintiff has established by a preponderance of the evidence a right to punitive damages and such damages are assessed at $20,000.00.

E. Damages in the total sum of $31,661.00 are awarded to plaintiff against the defendant United States of America.

■ F. Plaintiff's agreement to remain in the Armed Forces Reserve was obtained by misrepresentation. Any such agreement by plaintiff, therefore, is void and he is hereby relieved of the obligations thereof.

G. In accordance with 28 U.S.C. § 2678, Frank J. Neff, attorney at law, and the law firm of Barkan, Barkan & Neff, are entitled to and are hereby awarded the sum of $6,332.20, being 20% of the amount recovered herein. Such sum to be paid out of but not in addition to the amount of judgment hereby awarded.

It is so ordered.